MARTHA PETERS, appellant, v. ARTHUR RIECK and BERNARD BUHR, appellees.

No. 51270.

(Reported in 131 N.W.2d 529)

<br><br><br><br>

NOVEMBER 17, 1964.

Pappas & Senneff, of Mason City, for appellant.

Engelbrecht & Ackerman, of Waverly, for appellees.

MOORE, J.—Plaintiff appeals from a judgment on verdict for defendants in an action to recover for personal injuries sustained when the car in which she was riding, while stopped at a stop sign, was struck in the rear by a pickup truck owned by defendant Bernard Buhr and driven by his employee Arthur Rieck.

Plaintiff asserts the trial court erred in (1) submitting to the jury the issue of legal excuse because of sudden brake failure and (2) failing to properly instruct that defendants had the burden of proving their pleaded defense of legal excuse.

With the exception of whether Rieck made certain admissions about the condition of the brakes prior to the accident the facts material to the issues here presented are virtually free from dispute.

At about 12:30 p.m., January 23, 1962, plaintiff, Martha Peters, was riding in a Mercury automobile being driven by her husband going north on Highway 63 approaching the intersection of Highway 3 in Bremer County. Behind the automobile defendant Arthur Rieck was driving the Ford pickup truck of his employer, defendant Bernard Buhr. Buhr does not deny liability if Rieck is liable. For brevity and clarity we will therefore refer to Rieck as defendant.

Highways 63 and 3 are both paved. At the intersection are wing curves. The Mercury coming from the south went into the right wing curve and stopped by the stop sign before making the intended turn to the east on 3. While stopped it was struck from the rear by defendant's pickup, resulting in damage to the rear bumper and right rear taillight. Plaintiff testified the first blow was "real real hard" and the Mercury was struck twice after that. Plaintiff was thrown back and then forward by the jolt. Her injury was described as "a whiplash of the cervical spine".

Plaintiff testified Rieck at the scene stated he had driven around Waterloo that morning without a pound of brakes. Rieck denied making such a statement and said he had not been in Waterloo. He testified after the accident he immediately said the brakes had suddenly failed.

Mr. Peters testified he observed the pickup truck in the rear-view mirror immediately before the collision, about 50 feet from the stop sign and there was nothing to indicate it would not stop.

Rieck testified he had driven the pickup for several weeks prior to the accident, at all times prior to the last few feet traveled before the accident there was always positive response to the brake pedal when it was pressed down, he had no previous difficulty with the brakes, he drove the pickup to Cedar Falls that morning to get a farm machine part, made at least eight normal stops on the way and three more such stops on his return trip; as he approached the intersection he saw the Mercury stopped at the stop sign, he applied the foot brakes, slowed down to between 5 and 10 miles per hour but when he pressed down harder on the pedal to stop behind the Mercury he then heard a pop and the brake pedal instantly hit the floorboard. Defendant stated he was about 15 to 20 feet from the rear of the Mercury when the brakes suddenly failed, the hand or emergency brake was working but he did not have time to use it or do anything between the failure of the brakes and the impact.

Mrs. Rieck testified she had driven the pickup the day before the accident and experienced no difficulty with the brakes. Starr, another employee of Buhr, stated he had driven the pickup a short time before Rieck took it to go to Cedar Falls and the brakes were in good working condition.

Lester LaLone, a mechanic of many years experience, qualified as an expert witness and testified he inspected and repaired the hydraulic brake system of defendant's pickup truck. He stated:

"The left front wheel line, a hydraulic hose, had burst losing all of the hydraulic fluid, thus causing a complete brake failure. The bursting would be like a balloon, inner tube, or anything like that and the brake pedal would go clear to the floorboard. The bursting would be instantaneous and is caused by flexing and turning and the application of the brake. The line is flexible and goes from the frame of the vehicle to the backing plate of the wheel. If there is a weakness in the hose you may have perfect brakes one minute and the next minute you stop, you will have no brakes at all. When a hydraulic line breaks, there is nothing you can do or no way you can feel that it is going to happen, it just happens. He personally installed a new hydraulic brake line and replaced the hydraulic fluid, and that he then test drove the pickup truck and the brakes worked properly. At the time he received the pickup truck for repair it had no foot brakes at all."

I.   Section 321.430, Code, 1962, requires every motor vehicle operated upon a highway be equipped with brakes adequate to control the movement of and stop and hold the vehicle. It also requires two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels.

Section 321.431, subsection 5, requires all brakes be maintained in good working order and be so adjusted as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicle.

The trial court submitted two specifications of negligence, inadequate brakes and lack of control, and quoted the applicable law. In Instruction 7 the court states:

"You are instructed that the failure of the defendants or either of them to obey the foregoing rules of law stated and explained to you in this instruction is undisputed in this case, and that such failure constitutes negligence on the part of the defendants in the operation of said motor vehicle unless you shall

find them to be entitled to the defense of legal excuse as will be more fully explained to you in the following instructions."

Beginning with Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552, we have consistently held that where the statute has fixed the standard of care the failure to observe such standard (with one exception not here applicable) is negligence in the absence of legal excuse.

In Kisling v. Thierman, supra, we say: "By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception." Loc. cit., page 916, 214 Iowa, page 554, 243 N.W.

See also Florke v. Peterson, 245 Iowa 1031, 1034, 65 N.W.2d 372, 373; Wachter v. McCuen, 250 Iowa 820, 826, 96 N.W.2d 597, 600; 8 Drake Law Review, pages 110 to 127, Effect of Statutory Violations in Automobile Negligence Actions in Iowa.

Plaintiff argues the court erred in submitting legal excuse under the first and third definitions. She contends the statutory brake requirements are absolute and that negligence for failure to comply at all times is not subject to proof of legal excuse. We do not agree.

In 8 Am. Jur.2d, Automobiles and Highway Traffic, section 702, it is stated:

"Where the violation of a statute containing specific requirements as to brakes is established, most authorities support the view that such violation constitutes negligence per se. However, in some jurisdictions it is held that the failure to comply with such regulations may be excused, the courts stating that the violation of a statute relating to brakes, if without legal excuse, constitutes negligence per se. Under such a view, where the motorist has done all that can be reasonably expected of a person

of ordinary prudence to see that his vehicle is in proper condition, and an unforeseen failure of the brakes occurs, he is not usually held guilty of negligence as a matter of law."

In 60 C. J. S., Motor Vehicles, section 261, in regard to statutory brake requirements it is said: "In order to excuse noncompliance with such statutory requirements, defendant must show that something occurred wholly without his fault which rendered compliance impossible."

1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.) 561, section 672, states:

"The owner or operator of an automobile is not liable for an accident resulting from a collision, if such accident is occasioned solely by latent defects in materials employed in construction of the machinery of the automobile which the usual and well-recognized tests afforded by science and art for the purpose fail to detect, but one who undertakes to drive an automobile on the public highway is charged with notice of any defect therein affecting its operation which a reasonable inspection would disclose, whether the automobile belongs to him or to another and is loaned or rented to him for the occasion.

"Where a reasonable examination by the owner of an automobile fails to disclose defects, the owner is relieved from responsibility for damages arising from undisclosed defects."

The question presented under plaintiff's first assigned error has been considered in other jurisdictions.

In Lochmoeller v. Kiel, Mo. App., 137 S.W.2d 625, the evidence showed a brake failure resulted when a small gasket on the master cylinder of defendant's truck blew out a moment before its collision with a streetcar. The truck brakes had been in good working condition. At page 630 the court states:

"When a statute or ordinance, such as our statute requiring motor vehicles to be provided at all times with two sets of adequate brakes kept in good working order, has arbitrarily created a duty or fixed a particular standard of care, the failure to observe such duty or standard of care constitutes negligence per se, and when, in the trial of a case, the other essential elements being established, proof is adduced to show that the defendant failed to observe the duty thus imposed upon him, a case

of negligence is made for the jury in the first instance, that is, potentially or prima facie, whether or not such failure on defendant's part would have amounted to the disregard of any duty existing apart from that created by the statute or ordinance.

"Even so, however, there may still be facts and circumstances present in a given case which will excuse a technical violation of a statute or ordinance and render it improper for the court to declare as a matter of law that the particular violation constituted actionable negligence, and so, when the plaintiff shows such violation, it then devolves upon the defendant, if he desires and is able to do so, to offer proof in legal excuse or avoidance of his failure to have observed the duty created by the statute or ordinance. Ordinarily such an excuse would require the proof of something occurring wholly without the fault of the person charged with the violation, which had made it impossible for him to comply with the requirement of the statute or ordinance at the moment complained of, and which due care and prudence could not have guarded against. Where such character of proof appears from the defendant, the question of whether his technical but unintentional violation of the statute or ordinance amounted to actionable negligence is one for the jury to determine from all the facts and circumstances shown by the evidence, and it would only be where, admitting the violation, he failed to offer any legal excuse therefor, that negligence could be said to be established as a matter of law." (Citations)

Many jurisdictions have recognized that where an accident is caused solely by latent defects in materials employed in construction of the braking system which the usual and well recognized tests fail to detect, the owner or operator should not be held responsible. Nettleton v. James, 212 Ore. 375, 319 P.2d 879; Hassell v. Colletti, La. App., 12 So.2d 31; Jacklin v. North Coast Transp. Co., 165 Wash. 236, 5 P.2d 325; Walk v. Boudheim, 223 Wis. 514, 271 N.W. 27; Sothoron v. West, 180 Md. 539, 26 A.2d 16; Albers v. Ottenbacher, 79 S. D. 637, 116 N.W.2d 529.

We believe the record here shows substantial evidence of legal excuse for the violation of the brake requirement and con-

trol statutes and we therefore approve submission of this issue to the jury. Kohler v. Sheffert, 250 Iowa 899, 96 N.W.2d 911.

Our conclusion is supported by Amelsburg v. Lunning, 234 Iowa 852, 14 N.W.2d 680. There we reverse the trial court for failure to submit the question of legal excuse for a stop sign violation where the evidence showed that without defendant's knowledge his brakes had frozen.

II. Plaintiff next argues the trial court failed to instruct the defendant had the burden of establishing legal excuse by a preponderance of the evidence.

Prior to McMaster v. Hutchins, 255 Iowa 39, 120 N.W.2d 509, some uncertainty existed as to which party had the burden of showing legal excuse. However, the cited case holds the burden of proof is upon the defendant to establish legal excuse for violation of statute by a preponderance of the evidence and plaintiff is not required to prove defendant's violation was not excused.

The McMaster opinion was filed a few days before the case at bar was tried but apparently was not brought to the trial court's attention. However, a review of the instructions shows the jury was told defendant was negligent and then required defendant to prove legal excuse.

Although not required to plead legal excuse as a defense (Sanford v. Nesbit, 234 Iowa 14, 11 N.W.2d 695) defendant did so. The evidence on this issue was furnished by defendant.

In Instruction 2 the court states: "Defendants also plead legal excuse."

Instruction 4 states: "By 'burden of proof' is meant the obligation upon a party to prove the truth of an allegation made by him, which is denied by the opposing party."

After outlining what constitutes legal excuse as applicable to the facts of this case, Instruction 9 states:

"As you have found that at the time of the accident the brakes on the defendant's car did not comply with the requirements of the statute or that they were not maintained in good working order, then in order for the defendants to avail themselves of the defense of legal excuse, you must further find that it was impossible for the defendants to have met these statutory

requirements as to the brakes on this automobile and their maintenance in good order.

"*It is not enough for the defendants to show* the exercise of ordinary care or that these defects could not be anticipated and avoided by the exercise of ordinary care, but in order to avail themselves of the defense of legal excuse for defective brakes, you must find that it was impossible *for them* to have anticipated and avoided the failure of the brakes, which it is admitted by the defendants caused the collision with the car in which the plaintiff was riding." (Emphasis ours.)

After outlining what constitutes "emergency" as a legal excuse, Instruction 10 states:

"If you find that the driver, Arthur Rieck, was faced with an emergency not of his own making and because thereof was required to act upon the impulse of the moment without sufficient time to determine with certainty the best course to pursue, he is not to be held to the same accuracy of judgment as would be required of him if he had had time for deliberation, and under such circumstances he was required to act only as an ordinarily careful and prudent person would act when suddenly placed in a similar position, and if you find that he did so act, then you may find that the defense of sudden emergency is available to him as applied to any failure on his part to take measure to avoid the collision after he had found that his brakes had failed to work."

We are convinced the instructions sufficiently informed the jury the burden of proving the pleaded defense of legal excuse was on defendants.

We find no error.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.